IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRYAN PETERSON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH,<br><br>　　　　Defendant. | MEMORANDUM DECISION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:22-cv-00539<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Cecilia M. Romero |

## BACKGROUND

This matter is an action for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Rehabilitation Act of 1973.  Plaintiff Bryan Peterson alleges the Defendant University of Utah terminated him as the result of religious or disability discrimination, or that he was retaliated against for filing an internal complaint alleging discrimination.  The matter is presently before the Court on the University's Motion for Summary Judgment ("Motion").[1]  The University argues there is insufficient evidence in the record: to establish a prima facie case of religious or disability discrimination; to show the University retaliated against Mr. Peterson; or (even assuming Mr. Peterson can establish a prima facie case) that the reasons the University gave for terminating Mr. Peterson were merely pretext for discrimination.  For the reasons set forth below, the Court will grant the University's Motion.

---

[1] ECF No. 24.

## **FACTS**[2]

Mr. Peterson began working for the University in October 1989.[3] On June 22, 2021, Mr. Peterson scheduled a software update for the University's Duo[4] system that resulted in service interruptions to 781 servers and related University systems.[5] This was the fourth instance of Mr. Peterson issuing a software update or installation that led to a service interruption or required some remedial attention.[6]

On June 30, 2021, Mr. Peterson was placed on administrative leave while an investigation was performed to determine whether the June 22, 2021 Duo update had caused interruptions to the University's systems.[7] By 10:30 a.m. on June 22, 2021, Mr. Peterson knew his authorization, credentials, and administrative access to the University's systems had been revoked by the University.[8] Prior to this revocation, Mr. Peterson had logged into a system the University uses for electronic file storage, and he remained logged in after the revocation.[9] At 2:00 p.m. on June 22, 2021, Plaintiff began downloading 9,228 files from the University's electronic file storage system, despite knowing the University had revoked his authorization to do so.[10]

---

[2] The Court sets forth the facts most relevant to its decision. The Court, of course, considers the full factual record cited by the parties in reaching its decision.
[3] Def.'s Mot. at 9, ECF No. 24; *see* Pl.'s Opp'n at 4, ECF No. 29.
[4] Duo is a software multi-factor authentication tool the University uses to secure electronic systems containing protected health information and other sensitive or restricted information. Def.'s Mot. at 11; Pl.'s Opp'n at 6.
[5] Peterson Dep. at 38:18–40:21, 50:1–11, ECF No. 24, Ex. 1.
[6] Peterson Dep. at 46:9–50:11.
[7] Def.'s Mot. at 14; *see* Pl.'s Opp'n at 12.
[8] *Id.*
[9] *Id.* at 15.
[10] *Id.*

On July 5, 2021, Mr. Peterson filed a Complaint with the University's Office of Equal Opportunity ("OEO Complaint"), asserting religious and disability discrimination.[11] On July 7, 2021, Mr. Jim Livingston, one of Mr. Peterson's supervisors, authored a Notification of Pre-Disciplinary Conference indicating an intent to terminate Mr. Peterson.[12] Mr. Livingston first learned of Mr. Peterson's OEO Complaint on July 8, 2021, when he received a copy.[13]

Although others initiated the termination process, Ms. Donna Roach, who is the University's Chief Information Office of Health, Hospitals, and Clinics, "ha[d] the final authority to decide [whether Mr. Peterson] may be terminated and, absent her consent, [Mr. Peterson's] employment could not have been terminated."[14] Further, it is undisputed that, at the time she approved Mr. Peterson's termination, Ms. Roach was "unaware that [Mr. Peterson] was disabled, was agnostic or non-LDS, or had made any complaint of discrimination or retaliation."[15] In addition to providing final review of Mr. Livingston's recommendation to terminate Mr. Peterson, Ms. Roach testified that she "pushed [Mr. Livingston] to terminate Bryan [Peterson]."[16]

Mr. Peterson was terminated pursuant to a Notification of Decision to Terminate Employment dated July 30, 2021, signed by Mr. Livingston and Ms. Roach.[17] Mr. Peterson was

---

[11] ECF No. 29, Ex. 16.
[12] Notification of Pre-Disciplinary Conference, ECF No. 24, Ex. 15. While it is an undisputed fact for purposes of this Motion that Mr. Livingston authored the Memorandum, the Memorandum itself indicates it is from Mr. Elieson. *See* Def.'s Mot. at 18 & Ex. 15; Pl.'s Opp'n at 17.
[13] *See* Email from F. Matragos, ECF No. 29, Ex. 16;
[14] *See* Def.'s Mot. at 19; Pl.'s Opp'n at 18.
[15] Def.'s Mot. at 20, ECF No. 24; Pl.'s Opp'n at 19–20, ECF No. 29.
[16] Roach Dep. 31:14, ECF No. 24, Ex. 5.
[17] ECF No. 24, Ex. 16.

terminated for two reasons: (1) initiating a Duo update on June 22, 2021, which caused service interruptions to over 600 servers, despite prior warning about software updates that caused similar server problems; and (2) downloading 9,228 files from a University system after being placed on administrative leave and knowing his access to University systems had been revoked.[18]

Mr. Peterson's Complaint in this case alleges four claims: (1) Title VII discrimination on the basis of religion, (2) discrimination under the Rehabilitation Act, (3) Title VII retaliation, and (4) retaliation under the Rehabilitation Act.[19] Mr. Peterson claims he was discriminated against based on his religion (agnostic or non-LDS) and disability[20] (alcoholism or recovery therefrom).[21]

## ANALYSIS

The University is entitled to summary judgment because the undisputed facts in this case demonstrate Mr. Peterson cannot sustain a case of discrimination or retaliation. The Court must grant summary judgment when "the movant shows there is no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that initial burden has been met the non-moving party must demonstrate the existence of specific material facts in dispute to survive summary judgment. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir.

---

[18] Def.'s Mot. at 56–47, & Ex. 16, ECF No. 24.
[19] *See id.* ¶¶ 34–66.
[20] Compl. ¶¶ 8, 36, 44–45, ECF No. 2.
[21] *See* Pl.'s Opp'n at 4–5, ECF No. 29.

2013).  In resolving a motion for summary judgment, the Court views "the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." *Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008) (citation omitted).  Despite this deference, the nonmoving party must nevertheless "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.1999)).  "The mere existence of a scintilla of evidence in support" of the nonmoving party's case is insufficient.  *Anderson*, 477 U.S. at 252.  With these standards in mind, the Court turns to Mr. Peterson's claims.

### I. Mr. Peterson has not established a prima facie case of religious discrimination under Title VII nor disability discrimination under the Rehabilitation Act

Mr. Peterson's claims of religious discrimination under Title VII and disability discrimination under the Rehabilitation Act both fail because he has not shown the existence of circumstances giving rise to an inference of discrimination.  Ordinarily, to sustain a prima facie case of religious discrimination under Title VII based on circumstantial evidence,[22] a plaintiff must allege facts that demonstrate "membership in a protected class, an adverse employment action, and the existence of circumstances giving rise to an inference of discrimination." *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1200 (10th Cir. 2021); *see* 42 U.S.C. §

---

[22] In those rare instances where direct evidence of discrimination exists, a plaintiff need not employ the *McDonnell Douglas* burden shifting framework.  *See, e.g.*, *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1213 (10th Cir. 2022) (citing *inter alia McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 794 (1973))

2000e-2. Though, as here, "[w]here discrimination is not targeted against a particular religion, but against those who do not share a particular religious belief, the use of the protected class factor is inappropriate." *Shapolia v. Los Alamos Nat. Lab'y*, 992 F.2d 1033, 1038 (10th Cir. 1993). Similar to Title VII, a plaintiff asserting claim under Section 504 of the Rehabilitation Act, must show: "(1) that he is a 'handicapped individual' under the Act, (2) that he is 'otherwise qualified' for the position, (3) that he was discriminated against solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance." *Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 932 (10th Cir. 2024) (alterations omitted).[23] "The proof necessary to establish a prima facie case is not onerous." *Shapolia* at 1038.

Mr. Peterson asserts two circumstances he believes give rise to an inference of discrimination: first, that his non-disabled and LDS comparators received better treatment and, second, that he was fired for pretextual reasons.[24] These assertions will be discussed in turn.

### a. Mr. Peterson's purported comparators are not similarly situated because they did not engage in violations of comparable seriousness

As an initial matter, Mr. Peterson has not shown that any of his alleged comparators are LDS.[25] It is a closer question whether he has established a dispute of material fact about whether

---

[23] While Mr. Peterson contends that he need not show he was dismissed "solely" by reason of his disability, he does not address *Cline*. In any event, even assuming a more lenient standard applies, Mr. Peterson's claim fails because he has not shown he was discriminated against on the basis of his disability, at all.

[24] Given Mr. Peterson argues the University's alleged pretext also serves as evidence of his prima facie case, *see* Pl.'s Opp'n at 29, 34, the Court must necessarily address issues of pretext in evaluating Mr. Peterson's prima facie case. In such circumstances the "analysis [may be] conducted in reference to the prima facie case or the business justification versus pretext inquiry." *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1174 (10th Cir. 2005).

[25] Peterson Dep. 82:19–83:4, ECF No. 29, Ex. 4. Further, "[t]he general rule that [the Court] draw[s] inferences in favor of the party opposing summary judgment does not permit [the Court]

they are disabled.[26]  Nonetheless, even assuming Mr. Peterson's proffered comparators are not agnostic or disabled, Mr. Peterson has not shown any of his proposed comparators are similarly situated because none of them committed violations of "comparable seriousness." *Elmore v. Capstan, Inc.*, 58 F.3d 525, 530 (10th Cir. 1995).  "Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'" *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007).  "Even employees who are similarly situated must have been disciplined for conduct of 'comparable seriousness' in order for their disparate treatment to be relevant."  *Id.*  (alteration omitted).

Here, Mr. Peterson has not identified any comparator who engaged in violations of comparable seriousness.  Though Mr. Peterson indicates some other employees caused interruptions to University systems, he does not identify any comparator who caused four separate service interruptions, as Mr. Peterson did.[27]  Also, Mr. Peterson has not identified any comparator who, while placed on administrative leave, downloaded files despite knowing their access to University systems had been revoked, again as Mr. Peterson did.[28]  *Id.*  Accordingly, none of the eight individuals Mr. Peterson identifies were similarly situated because they did not

---

to presume" comparators' characteristics nor whether they are similarly situated. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1405 (10th Cir. 1997).

[26] While Mr. Peterson does not include a numbered response to the University's statement of fact number 80 addressing comparator disability, Mr. Peterson does assert that the University's OEO Investigator, Mr. Pollack, indicated "none of the individuals Peterson identified as comparators were disabled."  Pl.'s Opp'n at 20, ECF No. 29.  Mr. Pollack testified that he investigated whether Mr. Peterson's alleged comparators were disabled, and he does not "believe they were."  Pollack Dep. at 26:25, ECF No. 29, Ex. 10.

[27] Def.'s Mot. at 22; *see* Pl.'s Opp'n at 20; Def.'s Reply at 22–23, 31.

[28] Def.'s Mot. at 22; *see* Pl.'s Opp'n at 20.

engage in violations of comparable seriousness. Mr. Peterson was not terminated for an isolated instance that led to a service interruption; he was terminated after the fourth such instance. Moreover, he was terminated not only for this fourth incident involving a service interruption, but also because he also downloaded files while placed on administrative leave, despite knowing his access had been revoked. He offers no comparator who repeatedly caused service interruptions, nor one who downloaded files after their system access had been revoked.

> **b. The University's final decisionmaker, Ms. Roach, did not know of Mr. Peterson's religion or disability prior to his termination**

Next, Mr. Peterson's fails to establish a prima facie case of discrimination because the undisputed facts show that the final decisionmaker, Ms. Roach, could not have harbored any bias on the basis of Mr. Peterson's religion or disability because she was unaware of both. The Court must "assess pretext by looking at the final result of the disciplinary process, not the acts or motives of those who may be in the decision-making chain." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 715 (10th Cir. 2014).[29] Here, it is undisputed that Ms. Roach had final authority to decide whether Mr. Peterson should be terminated,[30] and it is undisputed that she was "unaware that [Mr. Peterson] was disabled, was agnostic or non-LDS, or had made any complaint of discrimination or retaliation."[31] Ms. Roach testified that she did not see a copy of Mr.

---

[29] "However, if the final decisionmaker merely relies on possibly biased reports or conclusions of others, rather than conducting an independent investigation, our focus shifts back to the supervisor." *Macon* at 715. This cat's paw, or rubber stamp, theory is addressed below. *Infra* Part I.a.1.
[30] *See* Def.'s Mot. at 19, ECF No. 24; Pl.'s Opp'n at 18, ECF No. 29.
[31] Def.'s Mot. at 20, ECF No. 24; Pl.'s Opp'n at 19–20, ECF No. 29.

Peterson's July 5, 2021 OEO Complaint, or otherwise become aware of his religion, disability, or employment complaints, until after his termination.[32]

Further, in addition to providing final review of the termination decision, Ms. Roach testified that she "pushed [Mr. Livingston (an intermediate supervisor of Mr. Peterson)] to terminate Bryan [Peterson]."[33]  Ms. Roach testified that Mr. Livingston was hesitant to terminate Mr. Peterson but became convinced termination was appropriate, and later recommended it, after Mr. Peterson downloaded 9,659 files after being placed on administrative leave.[34]  Given Ms. Roach did not know of Mr. Peterson's religious affiliation, or lack thereof, prior to his termination, Mr. Peterson has no evidence that could support an inference the University took any employment actions based on a discriminatory motive.

### 1. *Ms. Roach was not a Cat's Paw or Rubber Stamp for the Termination Decision.*

Additionally, the Court rejects any suggestion that Ms. Roach acted as a cat's paw or rubber stamp for Mr. Peterson's termination.  Mr. Peterson makes the conclusory statement that "Ms. Roach simply relied on what she was told and did not undertake any independent analysis or investigation into Peterson's conduct."[35]  Construed generously, this statement could be interpreted as advancing a "cat's paw" or "rubber stamp" theory of liability.  "Under what [the Tenth Circuit] ha[s] described as a "rubber stamp" or "cat's paw" theory of liability, an employer can be liable for the acts of a biased supervisor even if final discipline is imposed by a seemingly neutral higher authority.  *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 715 (10th Cir. 2014).

---

[32] Roach Dep. 61:9–65:22, ECF No. 24, Ex. 5.
[33] *Id.* at 31:14.
[34] *Id.* at 25:11–26:12, 33:5–25, 35:20–36:6.
[35] Pl.'s Opp'n at 28, ECF No. 29.

"That theory imputes a supervisor's motive to an employer if the motive influenced the employer's decision." *Parker v. United Airlines, Inc.*, 49 F.4th 1331, 1337 (10th Cir. 2022), *cert. denied,* 143 S. Ct. 1087, 215 L. Ed. 2d 397 (2023).  The Court rejects this argument for two reasons.  First, the issue is not adequately briefed.  Mr. Peterson does not cite any authority or meaningfully discuss the pertinent facts.

Second, the undisputed factual record dispels any notion that Ms. Roach acted as a mere cat's paw or rubber stamp.  As previously mentioned, Ms. Roach testified that she "pushed [Mr. Livingston] to terminate [Mr. Peterson]."[36]  Rather than acting as a cat's paw or rubber stamp, Ms. Roach "pushed" for termination. She did so independently and prior to Mr. Livingston recommending termination.[37]  Additionally, Ms. Roach conducted her own investigation of Mr. Peterson's conduct prior to providing her final approval for termination.[38]  Her investigation consisted of reviewing investigations performed by the University's Office of the Chief Information Security Officer ("CISO") and speaking with Corey Roach (no relation) who is the University's CISO.[39]  Accordingly, the undisputed facts do not support any claim that Ms. Roach acted as a mere rubber stamp for Mr. Peterson's termination.

---

[36] Roach Dep. 31:14, ECF No. 24, Ex. 5.
[37] Though Mr. Livingston subsequently recommended Mr. Peterson's termination based on Mr. Peterson downloading the 9,659 files after being placed on administrative leave.  Roach Dep. 25:11–26:12, 33:5–25, 35:20–36:6, ECF No. 24, Ex. 5.
[38] While Mr. Peterson attempts to create a dispute about whether Ms. Roach conducted her own investigation, he points to no contrary evidence.  Rather, Mr. Peterson argues Ms. Roach's investigation was flawed such that it demonstrates pretext.  *See infra* Part III.a.
[39] Roach Dep. 41:1–9, 50:3–15, 68:2–69:22, ECF No. 24, Ex. 5.

### II.     Mr. Peterson has not established a prima facie case of retaliation

Mr. Peterson fails to establish a prima facie case of retaliation because the University provided notice of its intent to terminate Mr. Peterson before any of Mr. Peterson's supervisors learned of his protected opposition to discrimination. To establish a prima facie Title VII retaliation claim, Mr. Peterson must offer evidence: "(1) [he] engaged in protected opposition to discrimination; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). The same requirements apply to claims of retaliation under the Rehabilitation Act.[40] *See Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010). The University concedes the first two elements.[41]

A plaintiff asserting retaliation "may rely solely on temporal proximity to show causation during the prima facie stage of the *McDonnell Douglas* framework where his protected activity is closely followed by an adverse employment action." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1191 (10th Cir. 2016) (noting that a one-and-one-half-month delay is sufficiently proximate to establish causation but a three-month delay, standing alone, is insufficient to establish causation). Mr. Peterson contends he has met this standard because he filed his complaint with the University's OEO July 5, 2021, and he was terminated by a memorandum dated July 30, 2021.[42] The Court finds Mr. Peterson has not established a prima facie case of

---

[40] While the Rehabilitation Act does not contain an express retaliation provision, the Tenth Circuit has imported the anti-retaliation provision from the Americans with Disabilities Act. *See Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007).
[41] Def.'s Mot. at 42, ECF No. 24.
[42] Pl.'s Opp'n at 36, ECF No. 29.

retaliation because the University was already considering termination prior to Mr. Peterson's supervisors learning of his protected activity.

At the outset, as stated previously, the final decisionmaker, Ms. Roach,[43] was "unaware that [Mr. Peterson] . . . had made any complaint of discrimination or retaliation"[44] until after he had been terminated. Further, even if the Court evaluates retaliation through the lens of Mr. Livingston, who learned of the OEO Complaint on July 8, Mr. Peterson's proffered evidence also fails to establish causation. "Employers need not suspend previously planned adverse employment actions upon encountering an employee's protected activity, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1192 (10th Cir. 2016) (alterations omitted) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)). The Supreme Court noted in *Breeden* that it was "immaterial" that the adverse action (transfer in *Breeden*) occurred one month after the supervisor learned of the protected activity because the employer had been contemplating the adverse action before learning of the protected activity. 532 U.S. at 269–70. In *Breeden*: the protected complaint was filed on April 1; the supervisor stated her intent to transfer on April 10; the employee served the complaint on April 11; and the employee was transferred one month after serving the complaint. *Id.* at 272.

Here, nearly identically to *Breeden*, Mr. Peterson filed his protected OEO Complaint on July 5;[45] Mr. Livingston authored his Notification of Pre-Disciplinary Conference Memo

---

[43] *See* Def.'s Mot. at 19, ECF No. 24; Pl.'s Opp'n at 18, ECF No. 29.
[44] Def.'s Mot. at 20, ECF No. 24; Pl.'s Opp'n at 19–20, ECF No. 29.
[45] *See* Email from Mr. Peterson dated July 5, 2021, ECF No. 29, Ex. 16.

12

indicating intent to terminate Mr. Peterson on July 7;[46] Mr. Livingston received Mr. Peterson's OEO Complaint on July 8;[47] and Mr. Peterson was then terminated on July 30.[48] Accordingly, as in *Breeden*, Mr. Livingston was contemplating adverse action before learning of Mr. Peterson's protected activity. Thus, it is immaterial that the adverse action occurred one month after Mr. Livingston learned of the protected activity (even assuming he is the relevant decisionmaker here). Accordingly, Mr. Peterson cannot establish any causal connection between his protected activity and his termination.

### III. Even assuming Mr. Peterson established a prima facie case, he has not shown the University's reasons for terminating him were pretextual

Even if the Court assumes Mr. Peterson has established a prima facie case, he fails to show the University's reasons for terminating him were pretextual. "If the plaintiff establishes a prima facie case, at the second step, the burden then 'shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision.'" *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215 (10th Cir. 2022) (quoting *Bekkem v. Wilkie*, 915 F.3d 1258 (10th Cir. 2019)). "If the employer makes this showing, at the final step, the burden shifts back to the plaintiff to demonstrate that the employer's explanations were 'pretextual—i.e., unworthy of belief.'" *Id.* Here, the University terminated Mr. Peterson for two reasons: (1) Mr. Peterson initiating a Duo update on June 22, 2021, which caused service interruptions to over six hundred servers, despite prior warnings about software updates that caused similar server problems; and (2) Mr. Peterson

---

[46] Notification of Pre-Disciplinary Conference, ECF No. 24, Ex. 15. While it is an undisputed fact for purposes of this Motion that Mr. Livingston authored the Memorandum, the Memorandum itself indicates it is from Mr. Elieson. *See id.*; Def.'s Mot. at 18, ECF No. 24; Pl.'s Opp'n at 17, ECF No. 29.
[47] *See* Email to Mr. Livingston dated July 8, 2021, ECF No. 29, Ex. 16.
[48] Notification of Decision to Terminate Employment, ECF No. 24, Ex. 16.

downloading 9,228 files from a University system after being placed on administrative leave and knowing his access to University systems had been revoked.[49]  These reasons are sufficient to shift the burden back to Mr. Peterson, who contends these reasons are pretextual.

### a. Mr. Peterson has not offered facts sufficient to show the University's reasons for terminating him were pretext for discrimination.

As mentioned previously,[50] Mr. Peterson has not shown the University's reasons for terminating him were pretextual.  To demonstrate pretext, Mr. Peterson must point to evidence from which a jury could infer the University "did not act for the asserted non-discriminatory reason[s]."  *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1059 (10th Cir. 2020).  "To show pretext, the plaintiff must establish that the employer's proffered reasons 'were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief.'"  *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1216 (10th Cir. 2022).  Yet "[n]ot every imperfect or errant action by an employer will provide a sufficient basis for an employee to satisfy his burden at the pretext stage."  *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1082 (10th Cir. 2023).  Further, and most critically in this case, the Court must "assess pretext by looking at the final result of the disciplinary process, not the acts or

---

[49] Def.'s Mot. at 56–47, ECF No. 24.  While the University proffered a third reasons in this litigation, namely Mr. Peterson deliberately disabling software called Tanium from his University issued laptop, the Court does not consider this basis for termination because it was not listed in the Notification of Pre-Disciplinary Conference, ECF No. 24, Ex. 15, or in the Notification of Decision to Terminate Employment, ECF No. 24, Ex. 16.  The Court has concerns about relying on a basis for termination that was not communicated during the disciplinary process, or even in the notice of termination.  *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1059 (10th Cir. 2020).  Given the other two reasons the University stated in the notice of termination provide a sufficient basis for Mr. Peterson's termination, the Court declines to reach the Tanium issue, as superfluous.
[50] *Supra* Part I.b.

motives of those who may be in the decision-making chain." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 715 (10th Cir. 2014).

As discussed above, the final decisionmaker, Ms. Roach,[51] was "unaware that [Mr. Peterson] was disabled, was agnostic or non-LDS, or had made any complaint of discrimination or retaliation."[52] For this reason alone, Mr. Peterson's assertion of pretext fails. The asserted grounds for termination could not be pretext for discrimination or retaliation on the basis of Mr. Peterson's disability, religion, or protected activity, because Ms. Roach was unaware of these facts when she approved Mr. Peterson's termination. Also, as previously mentioned, Ms. Roach was not simply stamping her final approval for Mr. Peterson's termination, but she testified that she was the first to conclude termination was warranted and even "pushed [Mr. Livingston] to terminate Bryan."[53] And despite Mr. Peterson's criticisms, it is undisputed that Ms. Roach conducted her own investigation of Mr. Peterson's conduct prior to providing her final approval for termination. Her investigation consisted of reviewing investigations performed by the University's Office of the Chief Information Security Officer ("CISO") and speaking with Corey Roach (no relation to Ms. Roach) who is the University's CISO.[54]

While Mr. Peterson suggests Ms. Roach should have done more, he does not identify any deficiencies that might demonstrate pretext. In *Markley*,[55] the plaintiff complained that he

---

[51] *See* Def.'s Mot. at 19, ECF No. 24; Pl.'s Opp'n at 18, ECF No. 29.
[52] Def.'s Mot. at 20, ECF No. 24; Pl.'s Opp'n at 19–20, ECF No. 29.
[53] Roach Dep. 31:14, ECF No. 24, Ex. 5.
[54] *Id.* at 41:1–9, 50:3–15, 68:2–69:22, ECF No. 24, Ex. 5.
[55] While *Markley* was decided under the ADEA, the pretext analysis does not differ from Title VII or the Rehabilitation Act. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007) (analyzing pretext under the ADEA and Title VII); *Williams v. Widnall*, 79 F.3d 1003, 1005 n.3 (10th Cir. 1996) (noting that *McDonnell Douglas* burden shifting applies to claims under § 504 of the Rehabilitation Act).

lacked an opportunity to present his version of events, pointed to asserted failures to strictly follow internal policy, and offered criticisms of the employer's investigation but pointed to no indicia of actual pretext. The Tenth Circuit held the asserted failures insufficient to establish pretext. *Markley*, 59 F.4th at 1082–83, 1087. Similarly, here, Mr. Peterson offers criticism of the University's investigation, complains that he was not afforded a grievance appeal, and baldly asserts the proffered reasons for his termination were pretextual, or should not have been treated as seriously as the University treated them.[56] Yet he points to no indicia of pretext. Further, as to the grievance appeal specifically, the Tenth Circuit has "never said an employer, to avoid an inference of pretext, must give an employee an opportunity to explain his version of events" and the Circuit has "rejected the assertion of pretext and subordinate bias in a situation where the employer did not permit the employee any opportunity to provide his version of events." *Markley* at 1087. Additionally, Mr. Peterson acknowledges that his grievance hearing was cancelled with the expectation it would be reset after the University investigated his OEO Complaint.[57] While the University did not reschedule the hearing, Mr. Peterson never requested it be reset and began pursuing remedies outside the University.[58] Rather than pretext, this shows lack of interest. In sum, Mr. Peterson has not pointed to any evidence to suggest he was terminated for any reason other than the two offered by the University. Namely, the June 22, 2021, Duo update that caused service interruptions to over 600 servers, and his download of 9,228 files from a University system after being placed on administrative leave, despite knowing his access to University systems had been revoked.

---

[56] *See* Pl.'s Opp'n at 37–42, ECF No. 29.
[57] *See id.* at 40–41.
[58] *See id.* at 41.

## **ORDER**

Based on the foregoing, the Court GRANTS Defendant University of Utah's Motion for Summary Judgment (ECF No. 24).  Judgment shall enter in favor of Defendant.

DATED this 16th day of August 2024.         BY THE COURT:

_____
Ann Marie McIff Allen
United States District Judge